1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Michael Andrew Vanata,                 No. CV-18-02922-PHX-JGZ

10                  Petitioner,              **ORDER**

11  v.

12  David Shinn,[1] et al.,

13                  Respondents.

14

15          Petitioner Michael Andrew Vanata has filed a Petition for Writ of Habeas Corpus

16  pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  Petitioner asserts that his constitutional rights

17  were violated when the state court revoked his probation and sentenced him to 15 years of

18  imprisonment.  Petitioner also asserts that his counsel was ineffective.  Respondents have

19  filed an Answer (Doc. 16) and Petitioner has filed a Reply (Doc. 17).  Having considered

20  the parties' filings, the Court will deny the Petition.

21  **I.      Factual and Procedural Background**

22          **A.      Petitioner's indictment and guilty plea resulting in imposition of lifetime**

23                   **probation**

24          In 2003, Petitioner was indicted in Arizona Superior Court on one count of child

25  molestation of a child under the age of 15 occurring in 2002, a class 2 felony and a

26  dangerous crime against children.  (Doc. 16-1, p. 7.)  The state subsequently filed a notice

27  _____

28          [1] David Shinn, who has replaced named Respondent Charles Ryan as the Director of the Department of Arizona Corrections, is substituted in place of Ryan.  *See* Fed. R. Civ. P. 25(d).

1    of intent to allege prior felony convictions.  (Doc. 16-1, pp. 11-17.)

2         On April 2, 2004, pursuant to a plea agreement, Petitioner pled guilty to attempted

3    child molestation, a class 3 felony and dangerous crime against children in the second

4    degree.[2]  (Doc. 16-1, pp. 25-26.)  The plea agreement stated that the crime carried "a

5    presumptive sentence of 10 years; a minimum sentence of 5 years; and a maximum

6    sentence of 15 years.  Probation is available."  (*Id.* at 19 (emphasis omitted).)  The plea

7    agreement stipulated that "[t]he defendant can be placed on probation for the rest of his life

8    with sex offender terms.  As a condition of probation, he can be required to serve up to one

9    year flat in the county jail."  (*Id.*)  The court deferred acceptance of the plea until the time

10   of sentencing.  (*Id.* at 26.)

11        On August 16, 2004, prior to sentencing, Petitioner signed a Plea Agreement

12   Addendum consenting "to judicial fact finding by preponderance of the evidence as to any

13   aspect or enhancement of sentence.  In making this decision the court is not bound by the

14   rules of evidence."  (*Id.* at 33.)  In the addendum, Petitioner also indicated that he

15   understood that by pleading guilty he was waiving any right to a trial by jury to determine

16   guilt and to determine any fact to impose sentence within the range stated in the plea

17   agreement.  (*Id.*)

18        At sentencing on August 16, 2004, the Court verified Petitioner's understanding of

19   the addendum.[3]  The court suspended imposition of a sentence and placed Petitioner on

20   lifetime probation.  (*Id.* at 47, 52.)  The court advised Petitioner that "if you violate your

---

21        [2] There is no existing transcript of the change-of-plea proceeding exists, and one
22   cannot be produced.  (*See* Doc. 16, p. 21 n.9; Doc. 16-1, pp. 28-31.)

23        [3] The following exchange occurred:

24   THE COURT:        Do you understand that by entering into this addendum
     you're giving up your right to have a jury determine by proof beyond a
25   reasonable doubt of [sic] any aggravating circumstances the State may allege
     as far as sentencing goes?
26   MR. VANATA:    I do, Your Honor.
     THE COURT:        You have the right to have a jury determine those
27   aggravating circumstances with proof beyond a reasonable doubt.  Do you
     understand all that?
28   MR. VANATA:    Yes, I do, sir.

(Doc. 16-1, p. 42.)

1  probation and your probation is revoked, you could be sentenced on a violation for up to

2  15 years.  Do you understand that?"  (*Id.* at 49.)  Petitioner responded:  "Yes, sir, I do."

3  (*Id.*)

4  **B.  Revocation of probation and imposition of 15-year sentence**

5  In May 2014, the state filed a petition to revoke Petitioner's probation, alleging that

6  Petitioner failed to comply with several terms of his probation.[4]  (*Id.* at 57-58.)  The

7  probation officer provided the court with a Probation Violation Report describing the

8  alleged violations and providing additional information about Petitioner.  (*Id.* at 84-87; *see*

9  *also* Doc. 16, pp. 25-26.)  In the violation report, the probation officer recommended that

10  the court revoke probation and sentence Petitioner to imprisonment.  (Doc. 16-1, p. 87.)  If

11  the court was inclined to reinstate probation, the probation officer recommended

12  Petitioner's placement on intensive probation services.  (*Id.*)

---

[4] The petition for revocation alleged that the probation officer had reason to believe that Petitioner failed to comply with the following terms of probation:

#24   1: Do not have contact with any minor, including relatives, without approval of APD.  On May 27, 2014, defendant admitted to seeing his biological children on several occasions in November 2013, December 2013, and January 2014.

#24   4: Do not engage in a sexual relationship with any person who has children under the age of 18.  On March 19, 2014, the defendant admitted to having an ongoing sexual relationship from February 2014 and March 2014 resulting in the pregnancy of an unknown female.  Defendant also admitted that the unknown female has two minor children.

#24   15: Abide by computer use guidelines.  On May 27, 2014, the defendant admitted to attempting to meet unknown, random females on Cragislist or other social media websites from August 2013 to February 2014.

#24   15: Do not use any computer equipment or access Internet without prior approval from APD.  On May 27, 2014, defendant admitted to engaging in online dating and actually met with an unknown female in October 2013.

#24   15: Do not use any computer equipment or access Internet without prior approval from APD.  On May 27, 2014, defendant admitted he has been using an unregistered email address.  The defendant failed to report this email address to the Adult Probation Department as well as MCSO.

#24:   3 Do not go near schools, school yards, parks or other locations deemed inappropriate by APD.  Defendant admitted to going to Lake Pleasant in June 2013 on five different occasions, as well as violating his curfew.

#24   4: Do not engage in a sexual relationship with any person who has children under the age of 18.  Defendant admitted to posting online personal ads for "Revenge Sex" from September 2013 to October 2013.

(Doc. 16-1, p. 57.)

1       At the probation revocation hearing on August 7, 2014, the court advised Petitioner
2   of the possible consequences if he admitted to violating one of the terms of probation,
3   including that Petitioner could be sentenced "to as much as 15 years."[5]   (*Id.* at 73.)
4   Petitioner admitted to violating term 24-3 by going to a location that was deemed
5   inappropriate by the Adult Probation Department.  (*Id.* at 62, 74.)

6       Upon defense counsel's request, the court proceeded with the disposition hearing
7   immediately after Petitioner's admission.  (*Id.* at 72, 75.)   Before hearing counsel's
8   positions on revocation, the court stated that it had reviewed the probation report and its
9   recommendations, the original presentence investigation report,[6] and the original plea
10  agreement.  (*Id.* at 76.)   The state recommended intensive probation.  (*Id.*)   Petitioner's
11  counsel requested reinstatement of Petitioner's probation.  (*Id.*)   Defense counsel stated
12  that Petitioner had been on probation since 2004, had no prior petitions to revoke, and a
13  long history of compliance while on probation.  (*Id.*)   Counsel also stated that the probation
14  revocation report contained "a great deal of information that's not relevant to the allegation
15  that Mr. Vanata admitted to, and I would ask the Court not to consider that irrelevant
16  information."  (*Id.* at 77.)

17      After hearing counsel's positions, the court "noted for the record, because counsel
18  brought it up, I'm not limited to consideration of only those things that Mr. Vanata admits

---

19   [5]  The court advised Petitioner:

20   If you admit to violating one of the term [sic] of your probation you could go
21   to prison.  The presumptive term is ten years, that could be increased to as
     much as 15 years or reduced to as little as 5 years.
22        On the other hand, you could be reinstated on probation for a period
     of up to your lifetime and you could get up to one year in the county jail as a
23   term of probation.
          You can also get a fine of up to $150,000 plus a surcharge.
24        Do you understand all of these possibilities?

25   (Doc. 16-1, p. 73.)   Petitioner responded:  "Yes, Your Honor."  (*Id.*)

26   [6]  Respondents did not submit the presentence report. They state that "the
     confidential criminal history portion of the pre-sentence report . . . was incorporated into
27   the probation violation report" and that "[t]he criminal history information remains
     confidential."  (Doc. 16, pp. 25-26.)  One of the state's briefs filed during post-conviction
28   relief proceedings states that the presentence report showed Petitioner had prior felony
     convictions for stolen property and theft, and two prior felony convictions for attempted
     sexual conduct with a minor, all occurring in 1993. (*Id.* at 26 n.13; Doc. 16-2, p. 91 n.3.)

to.  The other information listed in the probation report is extraordinarily relevant to whether or not reinstatement is appropriate, and I am considering that information, not just the things he admits doing wrong."  (*Id*. at 79-70.)  The court noted that Petitioner had victimized children prior to his conduct in the instant case and the court opined that Petitioner was "on . . . [his] way to doing it again."  (*Id*. at 80.).  The court also recognized that Petitioner committed the offense for which he was on probation "after a lengthy prison term" that he served for his prior offenses.  (*Id*.)

The court revoked Petitioner's probation and sentenced Petitioner to an aggravated term of 15 years' imprisonment.  (*Id*. at 80-81.)  In imposing an aggravated sentence, the court stated that it did not find any mitigating circumstances in light of Petitioner's "extensive criminal history of many felonies, both before and after . . . commit[ting] this awful offense; the young age of the victim, the violation of the position of trust.  Taking everything into consideration, I do believe a term greater than the presumptive term is appropriate."  (*Id*.)

## C.    Petitioner's state post-conviction relief (PCR) proceeding

Petitioner filed a *pro se* Petition for Post-conviction relief to challenge the revocation and sentence, claiming that:

- The state court abused its discretion and violated Petitioner's "6th and 14th Amendment rights of due process, equal protection, and the right to a fair hearing" by using a non-alleged prior conviction to determine Petitioner's sentence.  (Doc. 16-1, p. 112-13 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

- The judge who presided over Petitioner's probation revocation hearing was biased and prejudiced against Petitioner, denying Petitioner his Sixth and Fourteenth Amendment rights to a fair, unbiased, and impartial hearing.  (*Id.* at 113-15.)

- The probation officer violated Petitioner's Fifth and Fourteenth Amendment rights by presenting the court with sex-offender treatment disclosures and poloygraph information.  (*Id.* at 115.)

- The state court's consideration of the information in the probation report violated

Petitioner's rights to a fair hearing under the Sixth and Fourteenth Amendments because the report contained false and misleading information that the court relied upon.  (*Id*. at 118.)  Petitioner also claimed that he had newly discovered evidence that refuted some of the information in the probation report. (*Id*. at 110.)

• Petitioner's counsel was ineffective because he failed to investigate the issues raised in the probation report and to object to the court's alleged biased statements and use of a non-alleged prior and illegal sentence. (*Id*. at 109, 121-24 (citing *Strickland v. Washington*, 466 U.S. at 668 (1984)).

(*Id*. at 107-24.)

The court denied Petitioner's PCR Petition, finding that Petitioner failed to raise any colorable claims for post-conviction relief.  (Doc. 16-2 at 30.)

Petitioner sought appellate review.  (*Id*. at 32-49.)  Petitioner argued that the PCR court's various rulings constituted an abuse of discretion, fundamental and structural error, were arbitrary and capricious, and were contrary to Arizona law.  Petitioner also raised the following claims based on federal law: (1) the court's consideration of Petitioner's polygraph results and admissions at therapy violated Petitioner's Fifth and Fourteenth Amendment rights, and (2) the court violated Petitioner's "protection against double jeopardy under the 5th and 14th Amendments" by using elements of the offense to aggravate his sentence.  (*Id*. at 34.)  In his request for relief, Petitioner asserted that the PCR court abused its discretion and violated Petitioner's "Arizona and U.S. Constitutional rights on multiple occasions."  (*Id*. at 39.)  The Arizona Court of Appeals granted review and denied relief.  (Doc. 16-1, pp. 4-5.)

Thereafter, Petitioner sought review from the Arizona Supreme Court.  (Doc. 16-2, pp. 66-79.)  The Arizona Supreme court summarily denied review.  (*Id*. at 112-13.)

**D.      Petitioner's Federal Petition for Writ of Habeas Corpus**

Petitioner raises six grounds for relief in the instant petition.

In Ground 1, Petitioner asserts that his Sixth, Eighth, and Fourteenth Amendment rights were violated because, in revoking Petitioner's probation, the court relied on the

presentence report to find Petitioner guilty of aggravating factors that Petitioner had not admitted and the state had not alleged, and the court breached the plea agreement by imposing the aggravated maximum term of 15 years' imprisonment "rather than abiding by [Petitioner's] plea [agreement] and original sentencing factors . . . to no more than the statutory maximum of 10 years." (Doc. 1, pp. 6-7; Doc. 17, pp. 6-14.)

In Ground 2, Petitioner asserts that his Sixth, Eighth, and Fourteenth Amendment rights were violated because in revoking Petitioner's probation, the court used an element of the original offense—the victim's age—that was already used to enhance Petitioner's "sentencing range" in his plea agreement. (Doc. 1, p. 8.) Petitioner also asserts that the court's reliance on the victim's age violated his protection against double jeopardy. (*Id.*)

In Ground 3, Petitioner asserts that his Sixth, Eighth, and Fourteenth Amendment rights were violated because the judge who revoked his probation was biased against Petitioner, thus denying Petitioner a fair and impartial hearing.

In Ground 4, Petitioner asserts that the PCR court's rejection of Petitioner's motion for a change of judge denied Petitioner his rights to a fair and impartial hearing, in violation of the Sixth, Eighth, and Fourteenth Amendments. V

In Ground 5, Petitioner asserts that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated because he received ineffective assistance of counsel during the probation revocation proceedings.

In Ground 6, Petitioner asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the court relied on false and misleading information in the probation report, including polygraph results, to revoke Petitioner's probation.

In their Answer, Respondents argue that the Court should deny and dismiss the Petition because Grounds 1, 2, 3 and 6 lack merit. Respondents assert that Ground 4 is not cognizable on federal habeas review or, alternatively, is procedurally defaulted. Respondents argue that Ground 5 is procedurally defaulted.

**II.   Discussion**

The Court will deny the Petition because Grounds 1, 2, 3 and 6 are without merit or

1    Petitioner failed to provide specific argument or support for the claim; Ground 4 does not

2    present a cognizable claim; and Ground 5 is procedurally defaulted.

3        A.    **Applicable law for merits review of Grounds 1 and 3 and portions of**

4              **Grounds 2 and 6**

5        Unlike most section 2254 cases where the federal court generally affords deference

6    to the state court's decision on the merits, the Court will consider Grounds 1 and 3 and

7    portions of Grounds 2 and 6 de novo.  De novo consideration is appropriate because the

8    claims are procedurally defaulted and Respondents waived a procedural default defense.[7]

9        Generally, to avoid procedural default, a person in state custody must exhaust all of

10   the remedies available in the state courts prior to filing a federal habeas petition. 28 U.S.C.

11   § 2254(b)(1)(A).  To exhaust state court remedies, a petitioner must "fairly present" his

12   claims to the state's highest court in a procedurally appropriate manner.[8]  *O'Sullivan v.*

13   *Boerckel*, 526 U.S. 838, 848 (1999).  A petitioner fairly presents federal claims only if he

14   alerted the state courts that his claims rested on the federal Constitution. *Fields v.*

15   *Waddington*, 401 F.3d 1018, 1020-21 (9th Cir. 2005) (citation omitted).  "In order to alert

16   the state court, a petitioner must make reference to provisions of the federal Constitution

17   or must cite either federal or state case law that engages in a federal constitutional analysis."

18   *Id.* (citations omitted).    Additionally, to satisfy the fair presentment requirement, a

19   petitioner must raise the claim "in each appropriate state court."  *Baldwin v. Reese*, 541

20   U.S. 27, 29 (2004); *see also O'Sullivan* 526 U.S. at 845 (1999) (a petitioner's federal claims

21   must be presented during "one complete round of the State's established appellate review

22   process.").

23       Petitioner failed to fairly present: Grounds 1 and 3; the Sixth, Eighth, and Fourteenth

24   Amendment claims in Grounds 2; and the Sixth Amendment claim in Ground 6[9] on

---

25       [7] Respondents addressed the claims on the merits instead of raising a procedural
26   default defense.

27       [8] In Arizona, for "cases not carrying a life sentence or the death penalty, 'claims of
     Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona
28   Court of Appeals has ruled on them.'"  *Castillo v. McFadden*, 399 F.3d 993, 998 n.3 (9th
     Cir. 2005) (quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).
         [9] For purposes of this discussion, the Court will refer to the Sixth, Eighth, and

appellate review.  Petitioner's petition for review filed with the Arizona Court of Appeals did not refer to provisions of the U.S. Constitution or case law engaging in a constitutional analysis that would alert the court that Petitioner was raising the federal claims asserted in Grounds 1 and 3, and the specified portions of Grounds 2 and 6.  Additionally, Petitioner did not fairly present the claims by broadly asserting that the state court violated his constitutional rights.  "Mere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." *Castillo*, 399 F.3d at 999 (quoting *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999)).

"A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"  *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)).  Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy."  *Cassett v. Stewart*, 406 F.3d 614, 621 n. 6 (9th Cir. 2005) (emphasis in original).  When a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice to excuse the default, the district court is barred from considering the claims and must dismiss the petition.  *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(3) (2014).  Under Rule 32.2(a)(3), Petitioner would no longer have a remedy if he returned to the Arizona courts to present the claims at issue.  Accordingly, Grounds 1 and 3 and the specified portions of Grounds 2 and 6 are procedurally defaulted.  *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) ("[W]here a petitioner did not properly exhaust state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion

---

Fourteenth Amendment claims in Grounds 2 and the Sixth Amendment claim in Ground 6 as "the specified portions of Grounds 2 and 6."

1   requirement would now find the claims procedurally barred,' the petitioner's claim is

2   procedurally defaulted.") (quoting *Coleman*, 501 U.S. at 735 n. 1).  Further, Rule 32.2(a)(3)

3   constitutes an "adequate and independent" state ground for denying federal habeas review.

4   *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam) (preclusion of issues for failure to

5   present them at an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3)

6   "are independent of federal law because they do not depend upon a federal constitutional

7   ruling on the merits"); *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("Arizona Rule

8   of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and

9   consistently applied, so it is adequate to bar federal review of a claim."); *Murray v. Schriro*,

10  745 F.3d 984, 1016 (9th Cir. 2014) ("[A] claim that has been 'waived' under . . . [Ariz. R.

11  Crim. P. 32.2(a)(3)] is procedurally defaulted and therefore barred from federal court

12  consideration, absent a showing of cause and prejudice or fundamental miscarriage of

13  justice.") (quoting *Poland v. Stewart*, 169 F.3d 573, 578 (9th Cir. 1998)).

14      Respondents, however, have waived the procedural default defense by failing to

15  raise it in response to Petitioner's habeas petition and, instead, addressing Grounds 1, 2, 3,

16  and 6 on the merits.[10]  Procedural default is an affirmative defense which the state waives

17  by failing to raise it in response to a federal habeas petition.  *See Morrison v. Mahoney*,

18  399 F.3d 1042, 1046 (9th Cir. 2005) (citing *Franklin*, 290 F.3d at 1229); *Vang v. Nevada*,

19  329 F.3d 1069, 1073 (9th Cir. 2003).  Although in some cases the court may apply a

20  procedural bar even though the state failed to raise it, the Court declines to do so here.

21  "[T]he district court may, sua sponte, raise the issue of procedural default when the default

22  is obvious from the face of the petition and when recognizing the default would further the

23  interests of comity, federalism, and judicial efficiency." *Vang*, 329 F.3d at 1073 (declining

24  to apply the procedural bar) (internal quotation marks and citation omitted).  Here, the

25  default is not obvious from the Petition.   The default resulted from Petitioner's failure to

26  assert claims before the state appellate court; thus, the conclusion that Petitioner's claims

27  are procedurally defaulted can only be reached after reviewing Petitioner's state-court

28

---

[10] The Court notes that Respondents did not specifically discuss Petitioner's Eighth Amendment claims.

filings to determine which claims were raised in which court.   *See id.* (concluding that procedural default was not obvious in similar circumstances).  Given that Respondents had the opportunity to raise a procedural default defense (and did so as to Grounds 4 and 5), and given that Respondents fully briefed the instant claims on the merits, the Court will address the claims.[11]  Where the state court has not adjudicated the claim on the merits, and the state has not established a procedural bar to its consideration, review is de novo.  *Fox v. Johnson*, 832 F.3d 978, 985 (9th Cir. 2016).

1.   <u>Ground 1</u>

In Ground 1, Petitioner asserts that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated because: (a) the court "breach[ed]" Petitioner's plea agreement by "illegally aggravate[ing] my sentence beyond the statutory maximum stated in my plea," (b) Petitioner did not admit the aggravating factors cited by the court, the court improperly relied on the presentence report[12] to find the aggravating factors, and (c) the state never alleged that Petitioner had a prior conviction. (Doc. 16, p. 6.)  Petitioner's claims are without merit.  The sentence did not violate the plea agreement; the state court properly relied on Petitioner's prior convictions to aggravate Petitioner's sentence to the maximum sentence permitted under the plea agreement; and the state court's consideration of the

---

[11] The Court also notes that because the claims are plainly meritless, the Court may address the claims notwithstanding their procedural status.  *See* 28 U.S.C. § 2254(b)(2) (allowing denial of unexhausted claims on the merits); *Runningeagle v. Ryan*, 686 F.3d 758, 778 n. 10 (9th Cir. 2012) (exercising discretion afforded under § 2254(b)(2) to decline to address procedural default issue where relief denied on the merits); *see also Lambrix v. Singletary,* 520 U.S. 518, 524–25 (1997) (explaining that the court may bypass the procedural default question in the interest of judicial economy when the merits are clear but the procedural default issues are not).

[12] Respondents assert that Petitioner "interchanges 'pre-sentence' and 'probation' report. The record indicates that the court used a 'probation violation report' in determining Vanata's sentence. As this was used as a pre-sentence report, Respondents analyze the [Ground 1] claim as such." (Doc. 16, p. 28 n.14.)  The record reflects that the court was provided with a probation violation report and that the court also reviewed the original presentence report.  (Doc. 16-1, p. 75.)  Respondents also indicate that the criminal history portion of the presentence report, which reflects Petitioner's prior convictions, was incorporated into the probation violation report.  (Doc. 16, pp. 25-26.)  The Court will refer to the probation violation report as "the report" except where it may be necessary to distinguish between the presentence report and the probation violation report.

1   report did not violate Petitioner's Fourteenth Amendment due process rights.[13]

2        *a.*     *Petitioner's sentence did not violate of the terms of Petitioner's plea*
3        *agreement*

4       A criminal defendant has a federal due process right to enforce the terms of a plea

5   agreement into which he and the State entered. *See Santobello v. New York*, 404 U.S. 257,

6   260-262 (1971); *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (under

7   *Santobello*, "a criminal defendant has a due process right to enforce the terms of his plea

8   agreement"). "Plea bargains are contractual in nature and subject to contract law

9   standards." *United States v. Sandoval-Lopez*, 122 F.3d 797, 800 (9th Cir. 1997). Thus,

10  courts apply contract principles to examine and enforce the plain language of a plea

11  agreement and do not consider extrinsic evidence to interpret the terms of an agreement if

12  it is clear and unambiguous on its face. *United States v. Trapp*, 257 F.3d 1053, 1056 (9th

13  Cir. 2001); *Proctor v. Ryan*, No. CV09-168-PHX-MHM, 2010 WL 1337729, at *6 (D.

14  Ariz. Apr. 1, 2010).

15      Paragraph 1 of the "Terms" section of the plea agreement stated that "[t]his crime

16  "carries a presumptive sentence of **10 years**; a minimum sentence of **5 years**; and a

17  maximum sentence of **15 years**. Probation IS available. . . . The defendant can be placed

18  on probation for the rest of his life with sex offender terms." (Doc. 16-1, p. 19 (emphasis

19  in original).)  In the addendum to the plea agreement, Petitioner consented "to judicial fact

20  finding by preponderance of the evidence as to any aspect or enhancement of sentence.  In

21  making this determination, the court is not bound by the rules of evidence."  (*Id*. at 33.)

22  Petitioner acknowledged that he understood that he was waiving any right to a trial by jury

23  to determine guilt and to determine any fact to impose sentence with the range stated in the

24  plea agreement.  (*Id*.)  Neither the plea agreement nor the addendum placed any limits on

25  the sentencing range.  Because the plain language of the plea agreement exposed Petitioner

26

27          [13] The Court will dismiss Petitioner's claim that his Eighth Amendment rights were
violated.  The Rules Governing Section 2254 Cases (Habeas Rules) require the petition to
specify all grounds for relief, as well as the facts supporting each ground.  28 foll. U.S.C.
28  § 2254, Rule 2(c).  Petitioner provides no specific argument or support to establish an
Eighth Amendment violation and the Court discerns none.

1    to the full range of potential sentences, the court's imposition of a 15-year sentence did not

2    violate the terms of Petitioner's plea agreement.

3           b.      *The court's imposition of an aggravated sentence did not violate Petitioner's*

4                   *Sixth Amendment rights*

5           Petitioner takes issue with several of the factors, including Petitioner's prior

6    convictions, that the court relied on to impose an aggravated sentence.  With specific regard

7    to the prior convictions, Petitioner contends that the court's use of the convictions was

8    unconstitutional under the Supreme Court's holding in *Apprendi v. New Jesery*, 530 U.S.

9    466, 490 (2000).  (Doc. 1, pp. 6-7; Doc. 17, pp. 6-9.)  Petitioner asserts his rights were

10   violated because the state never alleged the priors, and he did not admit them.  Petitioner

11   also asserts that use of the priors violated various Arizona statutes and criminal procedural

12   rules because the state never alleged the priors, Petitioner did not admit them, and the court

13   relied on a presentence report to find them.  (Doc. 1, pp. 6-7; Doc. 17, p. 7.) The Court

14   concludes that Petitioner's claims of constitutional error are meritless.  The state court

15   properly aggravated Petitioner's sentence based on its finding of the fact of Petitioner's

16   prior convictions.  Further, Petitioner's claim of state law violations do not entitle Petitioner

17   to federal habeas relief.

18          "[T]he Federal Constitution's jury-trial guarantee proscribes a sentencing scheme

19   that allows a judge to impose a sentence above the statutory maximum based on a fact,

20   *other than a prior conviction*, not found by a jury or admitted by the defendant."[14]

21   *Cunningham v. California*, 549 U.S. 270, 274-75 (2007) (citing *Apprendi*, 530 U.S. 466

22   (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004),

23   and *United States v. Booker*, 543 U.S. 220 (2005)) (emphasis added).  Because the Supreme

24   Court has excluded the fact of prior convictions from the general rule that aggravating

25   factors must be found by a jury, "prior convictions need not be alleged in the indictment,

26   submitted to a jury, or proved beyond a reasonable doubt. . . . Rather the . . . court may find

27

28          ────────────────
            [14] A defendant may also waive the right to have a jury determine aggravating factors. *Apprendi*, 530 U.S. at 490; *Blakely*, 642 U.S. at 310.  Petitioner did so when he signed the addendum to the plea agreement.

the fact of a prior conviction." *United States v. Cohen*, No. 217CR00114APGCWH, 2018 WL 3822466, at *2 (D. Nev. Aug. 10, 2018) (citing *Apprendi*, 530 U.S. at 490, and *Alleyne v. United States*, 570 U.S. 99, 111, n.1 (2013)); *see also United States v. Guerrero-Jasso*, 752 F.3d 1186, 1192-1193 (9th Cir. 2014) (recognizing that prior convictions are excluded "from all of *Apprendi*'s requirements, including the requirement that facts essential to establishing penalty exposure be alleged in the indictment.").

In rendering its sentencing decision, the state court cited Petitioner's "extensive criminal history of many felonies" in addition to several other factors. (Doc. 16-1, p. 80.) Under Arizona's sentencing scheme, the existence of a *single* aggravating factor exposes a defendant to the maximum sentence. *See* A.R.S. § 13–702; *Proctor*, 2010 WL 1337729, *7. "In applying *Blakely* to this sentencing scheme, the Arizona Supreme Court concluded that 'once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum[.]'" *Van Norman v. Schriro*, 616 F. Supp. 2d 939, 944 (D. Ariz. 2007) (quoting *State v. Martinez*, 210 Ariz. 578, 115 P.3d 618, 625 (2005)), *aff'd*, 362 F. App'x 597 (9th Cir. 2010). "In other words, once an aggravating factor—properly established through a jury finding, an admission, *or a prior conviction*— increases a defendant's maximum sentence, the court may independently find and consider other aggravating factors to support a sentence within the new maximum." *Id*. (emphasis in original).

The state court's use of Petitioner's prior convictions to aggravate Petitioner's sentence forecloses Petitioner's Sixth Amendment challenge to his sentence premised upon the court's finding of any other additional aggravating factors. The state court was permitted to sentence Petitioner to the maximum range based on the finding of fact of the priors alone. *See Proctor*, 2010 WL 1337729, at *7 ("Although the trial court found several other aggravating factors, the properly considered aggravating factors were alone sufficient to expose him to the aggravated term of imprisonment. As a result, the state court's finding that Petitioner's aggravated sentence did not violate the Sixth Amendment is neither

1   contrary to, nor an unreasonable application of the Supreme Court's jurisprudence.")

2       *c.*     *The information in the report did not violate Petitioner's due process rights*

3       Petitioner claims that his due process rights were violated by the court's reliance on

4   the probation report to support its findings concerning Petitioner's prior convictions and

5   other acts that occurred while Petitioner was on probation.

6       Revocation of probation must comport with procedural due process.  *Black v.*

7   *Romano*, 471 U.S. 606, 612 (1985); *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973).  Due

8   process for the purposes of a probation revocation hearing includes a written notice to the

9   probationer of the claimed probation violations, disclosure of the evidence against him, an

10  opportunity for the probationer to be heard in person and to present witnesses and

11  documentary evidence, a neutral hearing body, a written statement by the factfinder as to

12  the evidence relied on and the reasons for revoking probation, the right to cross-examine

13  adverse witnesses unless the hearing body finds good cause for not allowing confrontation,

14  and the right to assistance of counsel in some cases.  *Black*, 471 U.S. at 611-12 (citing

15  *Gagnon*, 411 U.S. 786, 790).

16      Petitioner argues that under Arizona law the state was required to provide notice

17  that it was alleging prior convictions, and therefore the court's reliance on the Petitioner's

18  priors identified in the report was improper.  (Doc. 1, pp. 6-7.)  Petitioner's reliance on

19  various Arizona statutes and rules of criminal procedure which he claims required the state

20  to allege his prior convictions and prohibited the court from relying on a presentence report

21  to determine guilt, does not entitle Petitioner to federal habeas relief.  The Supreme Court

22  has "repeatedly held that 'federal habeas corpus relief does not lie for errors of state law.'"

23  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67

24  (1991)).

25      Only noncompliance with federal law renders a state court judgment susceptible to

26  collateral attack in federal court under section 2254.  Petitioner received the full protection

27  of the Fourteenth Amendment that he was due.  The record reflects that information

28  concerning Petitioner's prior convictions appeared in Petitioner's presentence report and

probation report.  Petitioner admits that he had notice of the information in the probation revocation report.  Petitioner states in his federal habeas Petition that that when he met with his attorney, "I disputed the entire probation report."[15]  (Doc. 1, p. 12.)  Defense counsel's argument at the revocation hearing that "the probation report does contain a great deal of information that's not relevant to the allegation that Mr. Vanata admitted to" (doc. 16-1, p. 77), also shows that Petitioner had notice, and an opportunity to be heard as to the contents of the report, including presenting evidence if he so desired.[16]

Petitioner also argues that certain information in the report is unsubstantiated or false.  Petitioner specifically challenges reference to a child protective services investigation that he alleges does not exist, an allegedly forged temporary restraining order and other statements provided to the probation officer by Cassie Belacourt whom he characterizes as an "untrustworthy source," and the probation officer's description of a domestic violence incident between Petitioner and his former wife.  (Doc. 1, pp. 16-17; Doc. 17, pp. 12-14.)  Petitioner also argues, without specific basis, that polygraph test results were used against him in violation of his Fourteenth Amendment rights.[17] (Doc. 1, p. 16.)  Petitioner submits documents that allegedly show the temporary restraining order did not exist.  He also submits affidavits challenging the probation officer's description of the domestic violence incident.

Petitioner's challenges do not establish a due process violation.  Petitioner received the rights to which he was due under federal law.  That Petitioner did not take advantage of his rights during the state proceedings to challenge the evidence he seeks to rebut on

---

[15] The Petition demonstrates that Petitioner was well-aware at the time of his revocation hearing of the report's contents.  Petitioner's Ground 5 raising Petitioner's procedurally-defaulted claim of ineffective assistance of counsel relies in large part on Petitioner's allegation that he told his counsel that the report contained "omissions, misrepresentation, and . . . misleading and false statements."  (Doc. 1, p. 12.)

[16] Petitioner blames his counsel for failing to challenge the report's contents. (Doc. 1, pp. 12-15; Doc. 17, p. 3).  The Court will not reach Petitioner's claims concerning counsel's alleged ineffectiveness because, as discussed *infra*, that claim is procedurally defaulted.

[17] The report states that Petitioner had six failed sexual history polygraphs, one failed monitoring polygraph regarding sexual contact with minors in the last two years, and one failed polygraph regarding sexual contact with his daughters.  (Doc. 16-1, p. 85.)

1    habeas review does not establish a due process violation.

2        2.    Ground 2

3        In Ground 2, Petitioner contends that the state court used the victim's age as a factor

4    to impose an aggravated sentence in violation of Petitioner's Sixth, Eighth and Fourteenth

5    Amendment rights.  (Doc. 1, p. 8; Doc. 17, p. 9.)

6        At the probation revocation hearing, the court stated that it did not see any mitigating

7    circumstances considering factors including the "young age of the victim."  (Doc. 16-1, p.

8    80.)  The court's reference to the victim's young age did not violate Petitioner's Sixth

9    Amendment rights.  As discussed with regard to Ground 1, Arizona's sentencing scheme

10   only requires that the state prove one aggravating factor to expose a defendant to the

11   maximum sentencing range.   Because the court properly relied on Petitioner's prior

12   convictions as an aggravating factor, the court was permitted to sentence Petitioner to the

13   maximum range on the fact of the prior convictions alone.  *See Proctor*, 2010 WL 1337729,

14   at *7.

15       Petitioner does not provide any basis upon which to conclude that his due process

16   rights were violated by the court's mention of the victim's "young age."  Through the

17   addendum to his plea agreement, Petitioner waived his right to have sentencing factors

18   found beyond a reasonable doubt by a jury.  Moreover, Petitioner does not establish he was

19   denied the process to which he was entitled under *Black and Gagnon*.  Accordingly, the

20   Court will deny Petitioner's Fourteenth Amendment claim.[18]

21       3.    Ground 3

22       In Ground 3, Petitioner asserts that his Sixth, Eighth, and Fourteenth Amendment

23   rights were violated at the probation revocation hearing because the judge was biased and

24   prejudiced against him.  (Doc. 1, p. 9-10.)  Petitioner asserts that the court exhibited bias

25   through its antagonistic remarks directed at Petitioner during the hearing[19] and the use of

26   _____

     [18]   The Court will dismiss Petitioner's Eighth Amendment claim pursuant to Habeas
27   Rule 2(c).  Petitioner provides no specific argument or support to establish an Eighth
     Amendment violation and the Court discerns none.

28       [19] The court's statements included:

improper information to aggravate Petitioner's sentence.  (*Id.*; Doc. 17, pp. 14-17.)

The Due Process Clause requires a "fair trial in a fair tribunal" before a judge with no actual bias against the defendant.  *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).  "To succeed on a judicial bias claim, . . . the petitioner must 'overcome a presumption of honesty and integrity in those serving as adjudicators.'" *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Absent any "evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'"  *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Petitioner provides no evidence of the judge's alleged bias outside the court's remarks and ruling.  Read in the context of the entire proceeding, the judge's comments neither suggest that he had a personal grievance against Petitioner nor created a pervasive climate of partiality and bias. The remarks consist of the court's stated reasons for revoking Petitioner's probation and imposing the sentence that it imposed.  The judge's comments, while perhaps harsh to Petitioner, explained the reasons why continuing Petitioner on

---

I am understanding of the State's recommendation for reinstatement and I agree that I've seen lots of cases where it takes time for counseling to take hold in these kinds of cases.  But this is a situation where that time has been spent and it, obviously to me, is not taking ahold.

You have victimized children in the past before.  You have victimized the child in this case.  After a lengthy prison term, you committed another heinous offense.  And based on what I see in the report, it appears to me that you're on your way to doing it again.  I don't see someone who's trying to get better; I see someone who's looking for victims.

I'm not putting you back on probation again, Mr. Vanata.  I am revoking your probation and sentencing you to a term in the Department of Corrections.

I have considered the aggravating and the mitigating circumstances here.  I don't see any mitigating circumstances considering your extensive criminal history of many felonies, both before and after you committed this awful offense; the young age of the victim, the violation of the position of trust.

Taking everything into consideration, I do believe a term of greater than the presumptive is appropriate.  So I'm giving you 15 years in the Department of Corrections with credit for 448 days already served.

(Doc. 16-1, pp 80-1.)

1   probation was not possible and the appropriateness of the sentence in light of various

2   aggravating factors.  Further, even if the court's reliance on the report was erroneous,

3   Petitioner fails to establish that any such error resulted from bias rather than a mistake of

4   law or fact.  In sum, the court's remarks and reliance on the report do not reveal opinions

5   or conduct of "such a high degree of favoritism or antagonism as to make fair judgment

6   impossible." *Liteky*, 510 U.S. at 555.  Accordingly, the Court will deny Ground 3's due

7   process claim on the merits.[20]

8           4.      Ground 6

9           In Ground 6, Petitioner asserts that the state court improperly relied on the

10   presentence report and used Petitioner's polygraph test as an aggravating factor in violation

11   of the Sixth and Fourteenth Amendments.  (Doc. 1, p. 16; Doc. 17, pp. 13-14.)

12           Petitioner's Sixth and Fourteenth Amendment claims are similar to those raised in

13   Ground 2 concerning the victim's age.  The Court concludes that the claims lack merit for

14   the same reason that Petitioner's claims in Ground 2 are without merit.

15   **B.      Applicable law for merits review of claims that the state court addressed**

16   **on the merits:  Fifth Amendment claims raised in Grounds 2 and 6**[21]

17   _____

18   [20] Pursuant to Habeas Rule 2(c), the Court will dismiss Petitioner's claim that the alleged judicial bias violated Petitioner's Sixth and Eighth Amendment rights. Petitioner provides no specific argument or support to establish Sixth or Eighth Amendment violations and the Court discerns none.

20   [21] The Court concludes that Fifth Amendment double jeopardy claim raised in Ground 2 of the federal habeas petition is exhausted even though Petitioner did not raise it in his PCR petition.  Petitioner raised the claim in his petition for appellate court review. Although the appellate court did not specifically discuss the claim, the court did not rely on a state procedural rule to reject it.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011). This presumption applies when the "state-court order...did not address any of the defendant's claims," and "when a state-court opinion addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).  "[T]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  *Richter*, 562 U.S. at 99–100. Additionally, because the Court presumes that the appellate court denied Petitioner's Fifth Amendment claim on the merits, the claim is exhausted.  *See Sandgathe v. Maass*, 314 F.3d 371, 377 (9th Cir. 2002) (state court's adjudication of claim on the merits precludes any exhaustion defense at that level of decision).
        The Court notes that Respondents did not argue that the claim was procedurally defaulted, and instead addressed the claim on the merits.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), this Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* at § 2254(d)(2).

A state-court decision is "contrary to" clearly established Federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from its precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). To satisfy this standard a state court need not cite Supreme Court cases or even be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

To find that a state court's factual determination is unreasonable under section 2254(d)(2), the court must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds as discussed in Murray (Robert) v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014). "This is a daunting standard—one that will be satisfied in relatively few cases." *Id.*

1.   Ground 2

Petitioner asserts that the state court's reference to the fact of the victim's "young age" when aggravating Petitioner's sentence violated the Double Jeopardy Clause because the victim's minor status was also an element of the offense for which he was sentenced. In rejecting relief, the Arizona appellate court did not specifically address Petitioner's double jeopardy claim. In cases where the state court does not provide an explanation for rejecting a claim of constitutional violation, the habeas court "must determine what arguments or theories . . . could have supported . . . the state court's decision; and then . . .

- 20 -

1   must ask whether it is possible fairminded jurists could disagree that those arguments or

2   theories are inconsistent with the holding in a prior decision of" the Supreme Court.

3   *Harrington*, 562 U.S. at 102.  The Court concludes that fairminded jurists could not

4   disagree with the appellate court's decision.

5        The Fifth Amendment's Double Jeopardy Clause "protects against multiple

6   punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). "Because

7   the substantive power to prescribe crimes and determine punishments is vested with the

8   legislature, . . . the question under the Double Jeopardy Clause whether punishments are

9   'multiple' is essentially one of legislative intent." *Id*. (footnote omitted).  Thus, "neither

10   double jeopardy nor double punishment considerations prevent the [state] legislature from

11   establishing a sentencing scheme such as Arizona's in which an element of a crime may

12   also be used for sentence enhancement and aggravation." *State v. Alvarez*, 67 P.3d 706,

13   709 (Ariz. Ct. App. 2003) (citing *State v. Bly*, 621 P.2d 279 (Ariz. 1980)).  Under Arizona's

14   sentencing scheme, "[t]o justify imposing a longer sentence than the presumptive . . . a trial

15   court must point to conduct that somehow exceeds the elements or aggravated the

16   circumstances of the offense. The presumptive sentence is to be presumptively applied

17   when the defendant's conduct satisfies but does not surpass the definition of the crime."

18   *Id*. (citations omitted).  Arizona's sentencing scheme allows courts to consider a prior

19   conviction as an aggravating factor, as well any other factors deemed relevant to

20   sentencing. A.R.S. § 13-702.

21        Here, in imposing a sentence beyond the presumptive term, the court did not solely

22   rely on factors that were not specifically listed in section 13-702.  The court considered

23   Petitioner's prior convictions.  Prior convictions are permissible aggravating factors

24   specifically identified under Arizona's sentencing scheme. Because the state court did not

25   rely solely on the victim's age as an aggravating factor, Petitioner's sentence does not

26   violate the Double Jeopardy Clause.[22]  Accordingly, the state court's decision was not

27
28        [22] The Court notes that even if a Double Jeopardy violation occurred, the error would be harmless.  The prejudicial impact of any constitutional error is assessed by asking whether the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *see also Fry v. Pliler*, 551 U.S.

1    contrary to, or an unreasonable application of, established federal law.  Nor was the court's

2    decision based on an unreasonable determination of the facts in light of the evidence

3    presented.

4         2.    Ground 6

5         In Ground 6, Petitioner asserts that the state court's use of his polygraph results

6    violated his Fifth Amendment protection against self-incrimination.  (Doc. 1, p. 16; Doc.

7    17, p. 13.)

8         Petitioner raised the Fifth Amendment claim in his petition for appellate court

9    review.  Although the appellate court decision did not specifically discuss Petitioner's

10   challenge to the polygraph results, the court held that the superior court was entitled to

11   considerer the probation violation report (containing the polygraph results), in addition to

12   the original presentence report and plea agreement, and, therefore, the court's summary

13   dismissal of Petitioner's PCR Petition was not an abuse of discretion.  (Doc. 16-1, pp. 4-

14   5.)  The appellate court's ruling that the polygraph results were properly considered is not

15   contrary to, nor an unreasonable application of federal law.  Nor was it an unreasonable

16   determination of the facts in light of the evidence presented.

17        The Fifth Amendment right against compelled self-incrimination applies only when

18   a compelled statement is used against a defendant in a criminal case.  *United States v.*

19   *Hulen*, 879 F.3d 1015, 1018 (9th Cir. 2018).  The Supreme Court and the Ninth Circuit

20   have held that that probation and supervised release revocations are not "criminal cases"

21   within the meaning of the Fifth Amendment.  *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7

22   (1984); *Hulen*, 879 F.3d at 1019-20 (9th Cir. 2018). Rather, they are considered part of the

23   matrix of punishment imposed pursuant to the original conviction. *Hulen*, 876 F.3d at 1020

24   (holding that because a proceeding to revoke supervised release is not a "criminal case" for

25   the purposes of the Fifth Amendment, the right against self-incrimination does not prevent

26   _____

27   112, 119-120 (2007) (holding that the *Brecht* standard applies whether or not the state court
     recognized the error and reviewed it for harmlessness).  Under *Blakely*, once the court
     found the fact of Petitioner's prior convictions, Petitioner was exposed to the maximum

28   term regardless of consideration of any other factors.

1  the use of the defendant's admissions made during mandatory sex-offender treatment to

2  revoke his supervised release).

3         The record does not clearly show that the state court used Petitioner's polygraph

4  results against him  The court did not specifically discuss the polygraph results, but did

5  state that it was "not limited to consideration of only those things that Mr. Vanata admits

6  to.  The other information listed in the probation report is extraordinarily relevant to

7  whether or not reinstatement is appropriate, and I am considering that information, not just

8  the things that he admits to doing wrong."  (Doc. 16-1, p. 80.)  To the extent that the court

9  may have used the polygraph results, no Fifth Amendment violation occurred.  Because

10 probation revocations are not "criminal cases" within the meaning of the Fifth Amendment,

11 the evidence was not used against Petitioner in violation of his Fifth Amendment right to

12 protection from self-incrimination.  *See Hulen*, 879 F.3d at 1020.

13         **C.      Ground 4 does not state a cognizable ground for federal habeas relief**

14        In Ground 4, Petitioner challenges the state court's denial of his motion for a change

15 of judge during the PCR proceeding.  Petitioner's claim, although framed as a violation of

16 his constitutional rights under the Sixth and Fourteenth Amendments, essentially

17 challenges the trial court's procedural ruling during post-conviction relief proceedings.

18        "[I]t is not the province of a federal habeas court to reexamine state-court

19 determinations on state-law questions."  *Estelle,* 502 U.S. 62, 67-68 (1991). The Ninth

20 Circuit has held that procedural errors arising during post-conviction relief proceedings are

21 not cognizable in habeas corpus proceedings under section 2254 because they do not

22 challenge a petitioner's detention.  *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989)

23 (per curiam ); *see also Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998) ("federal habeas

24 relief is not available to redress alleged procedural errors in state post-conviction

25 proceedings."), *overruled on other grounds by Martinez v. Ryan*, 566 U.S. 1 (Ariz. 2012).

26 Because Ground 4 challenges alleged state law errors occurring during Petitioner's post-

27 conviction relief proceeding, the Court will dismiss Ground 4.

28

1      **D.      Ground 5 is procedurally defaulted**

2          Ground 5, alleging ineffective assistance of counsel, is barred from federal habeas

3      review on independent and adequate state grounds.  A habeas petitioner's claim may be

4      barred from federal review if it was actually raised in state court but found by that court to

5      be defaulted on state procedural grounds. *See Coleman v. Thompson*, 501 U.S. 722, 729–

6      30 (1991).  If a state court expressly applied a procedural bar when a petitioner attempted

7      to raise the claim in state court, and that state procedural bar is both "independent"[23] and

8      "adequate"[24]—review of the merits of the claim by a federal habeas court is barred. *See*

9      *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state

10     court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed

11     in federal court.") (citing *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977) and *Murray v.*

12     *Carrier*, 477 U.S. 478, 485–492 (1986)).  When a petitioner has procedurally defaulted a

13     claim in state court, a federal court will not review the claim unless the petitioner shows

14     "cause and prejudice" for the failure to present the constitutional issue to the state court, or

15     makes a colorable showing of actual innocence.  *See Gray v. Netherland*, 518 U.S. 152,

16     162, (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S.

17     478, 485 (1986).

18         The Arizona appellate court relied on Rule 32.9(c), Ariz. R. Crim. P., to reject

19     Petitioner's claim of ineffective assistance of counsel.   Rule 32.9(c) "requires that a

20     petitioner present the issues and material facts supporting a claim in a petition for review

21     and prohibits raising an issue through incorporation of any document by reference, except

22     for appendices." *Wood v. Ryan*, 693 F.3d 1104, 1117 (9th Cir. 2012) (citing Ariz. R. Crim.

23     P. 32.9(c)(1)(iv)).   Citing Rule 32.9,   the court determined that Petitioner's claim of

24     ineffective assistance of counsel was not properly raised on review:

25         As to his claim[] regarding ineffective assistance of counsel . . . , he merely

26     _____

27     [23] A state procedural default rule is "independent" if it does not depend upon a
       federal constitutional ruling on the merits. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002).

28     [24] A state procedural default rule is "adequate" if it is "strictly or regularly
       followed." *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988).

asserts that error occurred and, thus, these issues are not properly before us. *See State v. Stefanovich*, 232 Ariz. 154, 158, ¶ 16 (App. 2013); *see also State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004).

(Doc. 16-1, p. 5.) In *Stefanovich,* the Arizona court of appeals relied on Rule 32.9(c)(1)(iv) to conclude that a PCR petitioner waived his claim of ineffective assistance of counsel "on review because he cites no relevant authority and does not develop the argument in any meaningful way." *Stefanovich*, 302 P.3d at 682 (citing Ariz. R. Crim. P. 32.9(c)(1)(iv)). The *Stefanovich* court explained that Rule 32.9(c)(1)(iv) requires that "the petition for review []contain 'reasons why the petition should be granted.'" *Id*. (quoting Ariz. R. Crim. P. 32.9(c)(1)(iv)).[25]

The appellate court's ruling constitutes an independent and adequate procedural bar. The appellate court's procedural ruling was "independent" of federal law because it did not depend on federal law or an examination of the merits of Petitioner's claims. *See Nitschke v. Belleque*, 680 F.3d 1105, 1110 (9th Cir. 2012) (discussing requirement that state procedural rule must rest on an "independent" state law ground).  Additionally, the ruling is based on an adequate procedural bar "because Arizona courts have regularly and consistently followed Rule 32.9(c) by summarily dismissing or denying petitions for review for failure to comply with the rule's requirements." *Foose v. Att'y Gen. of Arizona*, No. CV-14-00787-PHX-GMS, 2015 WL 3396834, at *8 (D. Ariz. May 26, 2015) (collecting cases); *see also Woods,* 693 F.3d at 1117; *Hadley v. Ryan*, No. CV-18-8076-PCT-DGC-DMF, 2019 WL 5273246, at *11 (D. Ariz. May 30, 2019) ("[t]he Ninth Circuit has held that the procedural requirements of Rule 32.9(c) are independent and adequate grounds to deny relief on federal constitutional claims." (citing *Wood,* 693 F.3d 1104 at (9th Cir. 2012)), *report and recommendation adopted*, No. CV18-8076-PCT-DGC-DMF, 2019 WL 5268864 (D. Ariz. Oct. 17, 2019)).

Because the Arizona Court of Appeals found review of Petitioner's ineffective

---

[25] Similarly, *Moody*, which the appellate court cited in support,  recognized that: "In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim."  94 P.3d at 1147.

1    assistance of counsel claim was barred based on an independent and adequate state ground,

2    Ground 5 is procedurally defaulted.  Petitioner does not argue cause or prejudice to excuse

3    the procedural default of this claim and the record presents none.  Accordingly, the Court

4    will dismiss Ground 5.

5    **III.     Denial of certificate of appealability**

6          Before Petitioner can appeal this Court's judgment, a certificate of appealability

7    (COA) must issue.  *See* 28 U.S.C. §2253(c); Fed. R. App. P. 22(b)(1); Rule 11(a) of the

8    Rules Governing Section 2254 Cases.  "The district court must issue or deny a certificate

9    of appealability when it enters a final order adverse to the applicant."  Rule 11(a) of the

10   Rules Governing Section 2254 Cases.  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may

11   issue only when the petitioner "has made a substantial showing of the denial of a

12   constitutional right."  The court must indicate which specific issues satisfy this showing.

13   *See* 28 U.S.C. §2253(c)(3).  With respect to claims rejected on the merits, a petitioner "must

14   demonstrate that reasonable jurists would find the district court's assessment of the

15   constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

16   For procedural rulings, a COA will issue only if reasonable jurists could debate whether

17   the petition states a valid claim of the denial of a constitutional right and whether the court's

18   procedural ruling was correct.  *Id.*  Upon review of the record in light of the standards for

19   granting a certificate of appealability, the Court concludes that a certificate shall not issue,

20   as the resolution of the petition is not debatable among reasonable jurists.

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

**IV.    Conclusion**

IT IS ORDERED:

1.    Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED.

2.    A certificate of appealability is DENIED.

3.    The Clerk of Court shall enter judgment accordingly and close the file in this matter.

Dated this 13th day of August, 2021.

Honorable Jennifer G. Zipps
United States District Judge